UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                                    Chapter 11 Case
                                                          Subchapter V

Farma Sci Life, Inc.,                                     Case No. 23-10398

      Debtor.

_____/

### *EXPEDITED* MOTION TO AUTHORIZE
### DEBTOR'S CONTINUED USE OF CASH COLLATERAL

### **Expedited Hearing Requested**

### Basis for Expedited Relief

**The Debtor needs use of cash collateral in order for the Debtor to continue to operate and maintain its value as a going concern.  Accordingly, the Debtor will suffer immediate and irreparable harm if it is not authorized to use cash collateral to operate its business.  The Debtor respectfully requests that this motion be set for hearing on or before January 20, 2023.**

Farma Sci Life, Inc. (the "Debtor") by and through its undersigned counsel and pursuant

to 11 U.S.C. §§ 105(a) and 363, respectfully requests that the Court enter an order authorizing the

Debtor to continue to use cash collateral.  In support, the Debtor states as follows:

### RULE 4001(b)(1)(B) CONCISE STATEMENT SUMMARIZING RELIEF

- **Name of Each Entity with a Cash Collateral Interest:** The following creditors *may* have an interest in the Debtor's cash collateral: (a) Headway Capital; (b) Everest Funding Group; (c) Pearl Funding; (d) BRMS, LLC; (e) TD Bank, N.A; (f) Fountainhead SBF, LLC; and (g) the United States Small Business Administration.

- **Purpose for the Use of Cash Collateral:** To operate the Debtor's business.

- **Material Terms:** The Debtor requests interim use of cash collateral subject to the attached budget for a period of thirty days from the entry of an interim order, and further requests that the Court schedule a hearing on final approval of the Debtor's use of cash collateral.

- **Adequate Protection**: All creditors which may claim an interest in cash collateral are

adequately protected by virtue of the fact that the Debtor will be operating on a cash flow positive basis, and additional adequate protection is proposed in the form of replacement liens.

1.      January 18 , 2023 (the "Petition Date"), the Debtors filed a voluntary petition for relief under subchapter V of chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

2.      The Debtor is operating its business and managing its affairs as a debtor in possession pursuant to 11 U.S.C. §§1182(2) and 1184.

3.      The Debtor is Florida corporation formerly known as BMH Ventures, Inc. and formerly known as Blue Moon Hemp, Inc. that has operated since January of 2016.

4.      The Debtor manufactures, distributes and engages in the online sale of cannabidiol (CBD) and Delta 8 tetrahydrocannabinol consumer products sold under the Blue Moon Hemp brand name.[1]

5.      The Debtor maintains an office in Pompano Beach, Florida and operates out of a manufacturing, warehouse, and distribution facility in Pompano Beach, Florida.

6.      The Debtor has one individual, John M. Maloney, Jr., serving as its President, CEO, and sole director.  In addition to Mr. Maloney, the Debtor employs twenty-two other individuals, including its founder and former chief operating officer, Christopher Cowart.

7.      As of the Petition Date, the Debtor estimates: (a) the book value of its accounts receivable at $549,919.55; (b) the book value of its inventory at $713,349.18; and (c) the book value of its furniture and equipment at $106,521.00.

---

[1] Under the Agriculture Improvement Act of 2018, P.L. 115-334, codified in relevant part at 21 U.S.C. § 802(16) and 7 U.S.C. § 1639*o*, such products are no longer illegal under federal law.

8. In order to finance its operations, the Debtor previously entered into a series of agreements with several providers of merchant cash advances, wherein such providers purported to take a security interest in the Debtor's accounts and/or other assets. The Debtor has listed prepetition debts—which the Debtor disputes—to the following providers of merchant cash advances (collectively, the "MCA's"):

    a. Headway Capital - $76,346.31;

    b. Everest Funding Group - $115,000.00;

    c. Pearl Funding - $154,000.00; and

    d. BRMS, LLC - $100,000.00.

9. While several UCC-1 financing statements have been filed in the Florida Secured Transaction Registry listing the Debtor, none have been filed listing any of the MCA's as a secured party.[2] Moreover, the Debtor believes that the debts asserted by the MCA's are unenforceable due to the terms of the agreements being criminally usurious. Accordingly, it is unclear which, if any, of the MCA's have a perfected security interest in any of the Debtor's assets and cash collateral.

10. Moreover, the Debtor is obligated to the United States Small Business Administration (the "SBA") for $2,000,000.00 after having received an Economic Injury Disaster Loan from the SBA. Finally, the Debtor received, pre-Petition, forgivable Paycheck Protection Program loans from TD Bank, N.A and Fountainhead SBF, LLC (together, the "PPP Lenders") in the respective amounts of $512,500 and $460,360, which the Debtor has listed as contingent claims. However, neither the SBA nor the PPP Lenders are listed as secured parties in any

---

[2] The financing statements filed in the Florida Secured Transaction Registry listing the Debtor (including the Debtor's former names BMH Ventures, Inc. and Blue Moon Hemp, Inc.) instead list the following secured parties: (a) C T Corporation, as Representative; (b) First Corporate Solutions, as Representative; and (c) Crestmark, a division of MetaBank, National Association.

financing statements filed in the Florida Secured Transaction Registry listing the Debtor, and as such, it does not appear that the SBA or the PPP Lenders have a perfected security interest in any of the Debtor's assets and cash collateral.

11.     Attached hereto as **Exhibit A** is a thirteen-week budget (the "Budget") encompassing the Debtor's expected income and expenses.  As set forth in the Budget, the Debtor expects to operate in bankruptcy on a cash flow positive basis.

3.     The Debtor requires the use of cash collateral to fund the necessary operating expenses of its business.  As set forth below, the Debtor requests that the Court approve its use of cash collateral pursuant to the terms of the Budget, and further authorize the Debtor to (a) exceed any line item on the Budget by an amount equal to ten (10%) percent of each such line item; or (b) to exceed any line item by more than ten (10%) percent so long as the total of all amounts in excess of all line items for the Budget do not exceed ten (10%) percent in the aggregate of the total Budget.

## ARGUMENT

4.     The Debtor's use of property of its estate is governed by Code section 363, which provides in pertinent part that:

> If the business of the debtor is authorized to be operated under section . . . 1108 . . . of this title and unless the court orders otherwise, the [debtor] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing.

11 U.S.C. § 363(c)(1).  A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with § 363.  *See* 11 U.S.C. § 1107(a).

5.     When a chapter 11 debtor in possession is authorized to operate its business, it may use property of estate in the ordinary course of business, but is prohibited from using cash collateral absent consent of the secured creditor or court authorization. 11 U.S.C. § 363(c).  The Code defines "cash collateral" as "cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest . . ." 11 U.S.C. § 363(a).

6.     It is appropriate for the Court to authorize the Debtor to use cash collateral because (a) all creditors with a potential interest in the Debtor's cash collateral are being adequately protected and (b) such use will preserve the going concern value of the estate.

### A.     Potential Secured Creditors Are Adequately Protected.

17.     The Bankruptcy Code does not define "adequate protection" but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including "other relief" resulting in the "indubitable equivalent" of the secured creditor's interest in its collateral.  *See* 11 U.S.C. § 361; *see In re Potvin Lumber Company, Inc.*, 24 B.R. 54 (Bankr. D. Vt. 1982) (ordering that the debtor could use cash collateral and finding that the bank was adequately protected because the total value of the debtor's personal property exceeded the bank's indebtedness).

18.     Adequate protection is to be determined on a case-by-case factual analysis. *See Mbank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987); *In re Martin*, 761 F.2d 472 (8th Cir. 1985); *see also* S. Rep. No. 95-989, 95th Cong., 2d Sess. 54 (1978). For example, *O'Connor* states that "[i]n order to encourage the Debtors' efforts in the formative period prior to the proposal of a reorganization, the court must be flexible in applying the adequate protection standard."  808 F.2d at 1396. (citations omitted).

19.     Adequate protection is meant to ensure that a secured creditor receives the value for which it originally bargained pre-bankruptcy. *Swedeland Dev. Group., Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (citation omitted).  The essence of adequate protection is to ensure the maintenance and continued responsibility of lien values during the interim between filing and confirmation in a case. *In re Arriens*, 25 B.R. 79, 81 (Bankr. D. Or. 1982).

20.     The MCA's, the SBA, and the PPP Lenders are each potentially secured creditors with a potential interest in the Debtor's cash collateral.  The adequate protection provided to such potentially secured creditors includes (a) the Debtor's positive cash flow position, and (b) replacement liens against the property of the Debtor for any use of cash collateral, with such liens having the same seniority and entitled to the same level of priority as the priority of such creditors' perfected liens—if any—against the Debtor's property that existed prior to the Petition Date.

21.     The Debtor's requested use of cash collateral and the protections afforded to parties with a potential interest in cash collateral herein are reasonable, appropriate, and sufficient to satisfy the legal standard of "adequate protection" and will serve to maintain the value of alleged collateral.

**B.     Cash Collateral Use Will Preserve the Debtor's Going Concern Value.**

22.     The continued operation of the Debtor's business will preserve its going concern value, enable the Debtor to capitalize on that value through a reorganization strategy, and ultimately facilitate the Debtor's ability to confirm a plan.  However, if the Debtor is not allowed to use cash collateral, especially through the regular collection of its accounts receivable, it will be unable to operate.

23.     It is well established that a bankruptcy court, where possible, should resolve issues in favor of preserving the business of the debtor as a going concern:

> A debtor, attempting to reorganize a business under Chapter 11, clearly has a compelling need to use "cash collateral" in its efforts to rebuild.  Without the availability of cash to meet daily operating expenses such as rent, payroll, utilities, etc., the congressional policy favoring rehabilitation over economic failure would be frustrated.

*In re George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984); *see In re Stein*, 19 B.R. 458, 460 (Bankr. E.D. Pa. 1982) (debtor permitted to use cash collateral when creditor was undersecured because such use was necessary to its continued operations and the creditor's secured position can only be enhanced by the continued operation of the debtor's business).

24.     If the Debtor cannot use cash collateral, it will be forced to cease operations.  By contrast, permitting cash collateral use will allow the Debtor to maintain operations and preserve the going concern value of its business which will inure to the benefit of all creditors.

25.     A proposed order granting this Motion on an interim basis is attached hereto as **Exhibit B**.

**WHEREFORE**, the Debtor requests that this Court enter an order: (a) authorizing the Debtor's use of cash collateral in accordance with the Budget and the terms set forth herein for a period of thirty (30) days from the date the Court grants the Motion; (b) granting the replacement liens set forth above in connection with the Debtor's use of cash collateral; (c) scheduling a final hearing; and (d) granting the Debtor such other and further relief as is just and proper.

Respectfully submitted,

**SHRAIBERG PAGE P.A.**
Proposed Attorneys for the Debtor
2385 NW Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Telephone: 561-443-0800
Facsimile: 561-998-0047
Email: bss@slp.law
Email: ependergraft@slp.law

By: */s/ Eric Pendergraft*
     Bradley S. Shraiberg
     Florida Bar No. 121622
     Eric Pendergraft
     Florida Bar No. 91927


## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was furnished via

Notice of Electronic Filing by CM/ECF to all parties registered to receive such service on January

18, 2023.   Additionally, a true and correct copy of the foregoing was furnished via U.S. Mail (and

if applicable, email) to the parties listed below on January 19, 2023.


     */s/ Eric Pendergraft*


Headway Capital
175 W Jackson Blvd
Suite 1000
Chicago, IL 60604
support@headwaycapital.com

Everest Funding Group
8200 NW 52nd Terrace
2nd Floor
Doral, FL 33166
gerado.arevalo@everestbusinessfunding.com

Pearl Funding
525 Washington Blvd
22nd Floor
Jersey City, NJ 07310

BRMS, LLC
1575 W Horizon Ridge Pkway
Henderson, NV 89012
eli.rubin@brmerchantservice.com

TD Bank, N.A.
Two Portland Square
Portland, ME 04112

TD Bank, N.A.
c/o United States Corporation Company
1201 Hays Street
Tallahassee, FL 32301

Fountainhead SBF, LLC
3216 West Lake Mary Drive
Lake Mary, FL 32746

U.S. Small Business Administration
Office of Disaster Assistance
14925 Kingsworth Road
Fort Worth, TX 76155

# EXHIBIT A



# 2023 Pro-Forma Statements

## NO DIP FINANCING

| Income Statement Projection | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 | Week 10 | Week 11 | Week 12 | Week 13 | Totals Q1 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | J16 - J22 | J23 - J29 | J30 - F5 | F6 - F12 | F13 - F19 | F20 - F26 | F27 - M5 | M6 - M12 | M13 - M19 | M20 - M26 | M27 - A2 | A3 - A9 | A10 - A16 | | |
| # Reps - Call Center | 6 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 12 | 12 | 12 | 12 | 12 | | |
| **Sales** Selling Days | | | | | | | | | | | | | | | |
| Legacy Sales | 25,000 | 25,500 | 26,010 | 26,660 | 27,060 | 27,466 | 28,290 | 28,997 | 30,012 | 30,762 | 31,378 | 31,692 | 32,072 | 370,900 | 33.0% |
| Call Center | 18,000 | 18,450 | 22,063 | 25,845 | 29,803 | 33,942 | 38,457 | 43,211 | 44,724 | 45,394 | 46,529 | 48,158 | 49,362 | 463,938 | 41.3% |
| Other Reps | 6,000 | 6,500 | 6,750 | 7,000 | 7,000 | 7,350 | 7,571 | 7,607 | 7,912 | 8,228 | 8,639 | 9,071 | 9,162 | 98,790 | 8.8% |
| E-Commerce | 13,750 | 13,800 | 14,000 | 15,000 | 17,500 | 13,000 | 14,000 | 14,500 | 14,000 | 14,500 | 15,000 | 16,000 | 15,000 | 190,050 | 16.9% |
| **Total Revenue** | 62,755 | 64,255 | 68,828 | 74,511 | 81,368 | 81,763 | 88,322 | 94,321 | 96,652 | 98,890 | 101,551 | 104,926 | 105,596 | 1,123,678 | 100.0% |
| Cumulative Revenues | 62,755 | 127,010 | 195,838 | 155,879 | 237,642 | 88,322 | 182,643 | 279,295 | 98,890 | 200,441 | 305,367 | 410,963 | | | |
| | | | | | | | | | | | | | | | |
| **COGS** | | | | | | | | | | | | | | | |
| Raw COGS | 20,082 | 20,562 | 22,025 | 23,843 | 26,038 | 26,164 | 28,263 | 30,183 | 30,929 | 31,645 | 32,496 | 33,576 | 33,791 | 359,596 | 32.0% |
| Shipping | 402 | 411 | 441 | 477 | 521 | 523 | 565 | 604 | 619 | 633 | 650 | 672 | 1,954 | 8,470 | 0.8% |
| Shipping Supplies | 100 | 103 | 110 | 119 | 130 | 131 | 141 | 151 | 155 | 158 | 162 | 168 | 489 | 2,118 | 0.2% |
| **Total COGS** | 20,584 | 21,076 | 22,576 | 24,439 | 26,689 | 26,818 | 28,970 | 30,937 | 31,702 | 32,436 | 33,309 | 34,416 | 36,234 | 370,184 | 32.9% |
| | | | | | | | | | | | | | | | |
| **Gross Profit** | 42,171 | 43,179 | 46,253 | 50,071 | 54,679 | 54,945 | 59,352 | 63,384 | 64,950 | 66,454 | 68,243 | 70,510 | 69,362 | 753,494 | 67.1% |
| | | | | | | | | | | | | | | | |
| **Operating Expenses** | | | | | | | | | | | | | | | |
| **Salaries & Wages** | | | | | | | | | | | | | | | |
| Chris & John | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 97,500 | 8.7% |
| Carol, Miguel, Creative | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 65,000 | 5.8% |
| Call Center Mgmt | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 39,000 | 3.5% |
| Legacy Salary | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 13,000 | 1.2% |
| Call Center Draw | 3,750 | 3,750 | 4,375 | 5,000 | 5,625 | 6,250 | 6,875 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 7,500 | 80,625 | 22.4% |
| Shipping | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 65,000 | 5.8% |
| **Sub-Total Salaries** | 25,250 | 25,250 | 25,875 | 26,500 | 27,125 | 27,750 | 28,375 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 29,000 | 360,125 | 32.0% |
| | | | | | | | | | | | | | | | |
| Commissions - Legacy | 2,500 | 2,550 | 2,601 | 2,666 | 2,706 | 2,747 | 2,829 | 2,900 | 3,001 | 3,076 | 3,138 | 3,169 | 3,207 | 37,090 | 3.3% |
| Commissions - Call Center | 1,800 | 1,845 | 2,206 | 2,585 | 2,980 | 3,394 | 3,846 | 4,321 | 4,472 | 4,539 | 4,653 | 4,816 | 4,936 | 46,394 | 4.1% |
| Commissions - Call Center Net | (1,950) | (1,905) | (2,169) | (2,415) | (2,645) | (2,856) | (3,029) | (3,179) | (3,028) | (2,961) | (2,847) | (2,684) | (2,564) | (34,231) | -3.0% |
| Commissions - Other Reps | 600 | 650 | 675 | 700 | 700 | 735 | 757 | 761 | 791 | 823 | 864 | 907 | 916 | 9,879 | 0.9% |
| Commissions - Override | 540 | 554 | 662 | 775 | 894 | 1,018 | 1,154 | 1,296 | 1,342 | 1,362 | 1,396 | 1,445 | 1,481 | 13,918 | 1.2% |
| Commissions - Ecomm | 688 | 690 | 700 | 750 | 875 | 650 | 700 | 725 | 700 | 725 | 750 | 800 | 750 | 9,503 | 0.8% |
| **Commissions - Sub-Total** | 4,178 | 4,384 | 4,676 | 5,060 | 5,511 | 5,688 | 6,256 | 6,824 | 7,279 | 7,565 | 7,953 | 8,453 | 8,727 | 82,552 | 7.3% |
| | | | | | | | | | | | | | | | |
| **Sub-Total - SGA** | 29,428 | 29,634 | 30,551 | 31,560 | 32,636 | 33,438 | 34,631 | 35,824 | 36,279 | 36,565 | 36,953 | 37,453 | 37,727 | 442,677 | 39.4% |
| PTEB | 5,297 | 5,334 | 5,499 | 5,681 | 5,874 | 6,019 | 6,234 | 6,448 | 6,530 | 6,582 | 6,652 | 6,741 | 6,791 | 79,682 | 7.1% |
| **Total SGA** | 34,724 | 34,968 | 36,050 | 37,241 | 38,510 | 39,457 | 40,865 | 42,272 | 42,809 | 43,146 | 43,605 | 44,194 | 44,517 | 522,359 | 46.5% |
| | | | | | | | | | | | | | | | |
| Marketing & Promo | 471 | 482 | 516 | 559 | 610 | 613 | 662 | 707 | 725 | 742 | 762 | 787 | 792 | 8,428 | 0.8% |
| Social Media Marketing | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 9,750 | 0.9% |
| Merchant Charges | 2,008 | 2,056 | 2,203 | 2,384 | 2,604 | 2,616 | 2,826 | 3,018 | 3,093 | 3,164 | 3,250 | 3,358 | 3,379 | 35,960 | 3.2% |
| Computer & Internet | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 600 | 7,800 | 0.7% |
| Rent Expense | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 35,750 | 3.2% |
| Insurance | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 9,750 | 0.9% |
| Travel & Entertainment | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 9,750 | 0.9% |
| Auto Expense | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,500 | 0.6% |
| Office Supplies & Expense | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,600 | 0.2% |
| Professional Fees | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 39,000 | 3.5% |
| Repairs & Maintenance | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 200 | 2,600 | 0.2% |
| Telephone | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 9,750 | 0.9% |
| Utilities | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 700 | 9,100 | 0.8% |
| Dues/Subscriptions/Donations | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 150 | 1,950 | 0.2% |
| Taxes & Licenses | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 6,500 | 0.6% |
| Other - Misc | 941 | 964 | 1,032 | 1,118 | 1,221 | 1,226 | 1,325 | 1,415 | 1,450 | 1,483 | 1,523 | 1,574 | 1,584 | 16,856 | 1.5% |
| **Total Operating Expenses - Variable** | 15,020 | 15,102 | 15,351 | 15,661 | 16,035 | 16,056 | 16,414 | 16,740 | 16,868 | 16,990 | 17,135 | 17,318 | 17,355 | 212,044 | 18.9% |
| **Total OPEX** | 49,745 | 50,069 | 51,401 | 52,902 | 54,545 | 55,513 | 57,278 | 59,013 | 59,677 | 60,136 | 60,740 | 61,513 | 61,872 | 734,403 | 65.4% |
| | | | | | | | | | | | | | | | |
| **Net Operating Income (EBITDA)** | (7,573) | (6,890) | (5,148) | (2,831) | 135 | (568) | 2,074 | 4,371 | 5,274 | 6,318 | 7,503 | 8,998 | 22,819 | 16,501 | 1.5% |
| | | | | | | | | | | | | | | | |
| Cash In | 62,755 | 64,255 | 68,828 | 74,511 | 81,368 | 81,763 | 88,322 | 94,321 | 96,652 | 98,890 | 101,551 | 104,926 | 105,596 | 1,123,678 | |
| Cash Out | (49,745) | (50,069) | (51,401) | (52,902) | (54,545) | (55,513) | (57,278) | (59,013) | (59,677) | (60,136) | (60,740) | (61,513) | (61,872) | (734,403) | |
| Cash +/- | 13,010 | 14,186 | 17,427 | 21,608 | 26,823 | 26,250 | 31,044 | 35,308 | 36,976 | 38,754 | 40,812 | 43,413 | 43,723 | 389,275 | |
| COGS Cash @ 50% | 10,292 | 10,538 | 11,288 | 12,220 | 13,344 | 13,409 | 14,485 | 15,469 | 15,851 | 16,218 | 16,654 | 17,208 | 18,117 | | |
| Net Cash Available | 2,719 | 3,648 | 6,140 | 9,389 | 13,479 | 12,841 | 16,559 | 19,839 | 21,125 | 22,536 | 24,157 | 26,205 | 25,607 | | |

**Notes:**
Current levels of sales and personnel are reflected.

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

In re:                                              Chapter 11 Case
                                                    Subchapter V

Farma Sci Life, Inc.,                               Case No. 23-10398

      Debtor.
_____/

## INTERIM ORDER GRANTING *EXPEDITED* MOTION
## TO AUTHORIZE DEBTOR'S CONTINUED USE OF CASH COLLATERAL

**THIS MATTER** came before the Court for hearing on January 20, 2023  upon the

*Expedited Motion to Authorize Debtor's Continued Use of Cash Collateral* [ECF No. ___] (the

"Motion") filed by Farma Sci Life, Inc. (the "Debtor").

Having considered the Motion, the argument of counsel, the record in this case, and being

otherwise fully advised in the premises, it is **ORDERED AND ADJUDGED** that:

1.     The Motion [ECF No. ___] is **GRANTED** on an interim basis subject to a final

hearing.

{2451/000/00549784}

2.      <u>Use of Cash Collateral</u>.  The Debtor shall be entitled to use cash collateral to pay all ordinary and necessary expenses in the ordinary course of its business for the purposes contained in the budget attached to the Motion as Exhibit A (the "Budget") for a period of thirty days from the date of this Order.  The Debtor is also authorized: (a) to exceed any line item on the Budget by an amount equal to ten (10%) percent of each such line item; or (b) to exceed any line item by more than ten (10%) percent so long as the total of all amounts in excess of all line items for the Budget do not exceed ten (10%) percent in the aggregate of the total Budget.

3.      <u>Replacement Liens</u>.   Notwithstanding the provisions of  section 552(a) of the Bankruptcy Code, and in addition to the security interests preserved by § 552(b) of the Bankruptcy Code, the Debtor grants in favor of (a) Headway Capital; (b) Everest Funding Group; (c) Pearl Funding; (d) BRMS, LLC; (e) TD Bank, N.A; (f) Fountainhead SBF, LLC; and (g) the United States Small Business Administration, as security for all indebtedness that is owed by the Debtor to the same, but only to the extent that each entity's cash collateral is used by the Debtor, post-petition security interests and liens in, to and against any and all personal property assets of the Debtor, to the same extent and priority that each such entity held a properly perfected pre-petition security interest in such assets; <u>provided that</u>, however, under no circumstances shall each entity have a lien on any causes of action arising under 11 U.S.C. § 542 *et seq.*, 547, 548, 549, 550, 551, or any of the Debtor's assets that it did not have a right to pre-petition.

4.      <u>Duration.</u>  The use of cash collateral provisions in this Order shall remain in effect for a period of thirty days from the date hereof, or until otherwise ordered by the Court.

5.      <u>Final Hearing</u>. This Court shall hold a final hearing on cash collateral on _____ ____, 2023 at ___:_____ ____**.m.** at the United States Bankruptcy Courthouse, Flagler Waterview Building, 1515 North Flagler Drive, 8th Floor, Courtroom B, West Palm Beach, Florida 33401.

{2451/000/00549784}

###

Submitted by:

Bradley S. Shraiberg, Esq.
Proposed Counsel for the Debtor
2385 N.W. Executive Center Drive, Suite 300
Boca Raton, Florida 33431
Telephone: (561) 443-0800
Facsimile: (561) 998-0047

Copy to: Bradley S. Shraiberg, Esq.

*Eric Pendergraft is directed to serve a copy of this Order upon all interested parties and to file a certificate of service with the Court.*